IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTWAN ASKIA | : | |
| | : | |
| v. | : | CRIMINAL NO. L-98-0258 |
| | : | CIVIL NO. L-04-2914 |
| UNITED STATES OF AMERICA | : | |

**MEMORANDUM**

Pending is petitioner Antwan Askia's ("Askia") pro se motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Because the papers adequately present the issues, no hearing is necessary.[1] For the reasons set forth below, the Court will, by separate order, DENY Askia's motion and DIRECT the Clerk to CLOSE the case.

**I.     Background**

Askia was a member of Marshawn Stokes's ("Stokes") drug-dealing organization (the "Stokes Organization"), which operated in Baltimore City in the mid-to-late 1990's.[2] Between June 24, 1998 and June 2, 1999, the government obtained an indictment and several superceding indictments against Askia and other members of the organization. Askia was charged with one count of conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846.

---

[1]  See United States v. Yearwood, 863 F.2d 6, 7 (4th Cir. 1988) (recognizing that "[a] hearing is not required . . . on a § 2255 motion if the record of the case conclusively shows that petitioner is entitled to no relief").

[2]  The background of the Stokes Organization is set forth in United States v. Stokes, 64 Fed. Appx. 352 (2003).

After a five-week trial, a jury convicted Askia on July 23, 1999.[3] On April 9, 2001, this Court sentenced him to 240 months' imprisonment. That same day, he noticed an appeal to the United States Court of Appeals for the Fourth Circuit. On May 22, 2003, the Fourth Circuit affirmed.[4] The Supreme Court denied certiorari on October 6, 2003.

On September 9, 2004, Askia timely filed the instant motion, in which he contends that:

(i) his sentence is unconstitutional, and

(ii) his counsel, Peter Ward ("Ward"), was ineffective on appeal for failing to argue convincingly that the District Court improperly admitted hearsay evidence at trial.

## II.   Constitutionality of Sentence Claim

Askia contends that his sentence of 240 months is unconstitutional under Apprendi v. New Jersey, 530 U.S. 466 (2000). In Apprendi, the Supreme Court held that "[o]ther than the fact of prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490 (emphasis added). Here, Askia was given exactly the statutory maximum sentence for his charged offense.[5] Because the sentence was not increased beyond the statutory maximum, his sentence does implicate Apprendi.

Askia next argues that his sentence is unconstitutional under Blakely v. Washington, 542 U.S. 296 (2004), because his offense level under the United States Sentencing Guidelines was based on facts not considered by the jury or charged in the indictment. Although Askia does not cite to United

---

[3]   Stokes, Ahmad Linton, and Cornell Williams were tried at the same time.

[4]   Stokes, 64 Fed. Appx. at 358.

[5]   See U.S. v. Stokes, 261 F.3d 496, 299 (4th Cir. 2001) (acknowledging that the maximum sentence under 21 U.S.C. § 841 is 20 years).

States v. Booker, 543 U.S. 220 (2005), which extended Blakely to the federal sentencing guidelines, the Court will assume that he also relies on Booker.[6]

The Fourth Circuit has held that the rule announced in Booker "is not available for post-conviction relief for federal prisoners . . . whose convictions became final before Booker (or Blakely) was decided." United States v. Morris, 429 F.3d 65, 72 (4th Cir. 2005), cert. denied, 127 S. Ct. 121 (Oct. 2, 2006). Askia's conviction became final in 2003, long before the Blakely and Booker decisions. Accordingly, Askia may not rely on either to invalidate his sentence.

### III.    Ineffective Assistance of Counsel Claim

**A.    Background**

In July 1998, Antonio Howell ("Howell"), the leader of a rival drug-dealing organization known as the "Nickel Boys," was arrested and incarcerated at the Baltimore City Detention Center ("BCDC"). Stokes had been incarcerated at the same facility since September 1997.

Within approximately one week of Howell's arrival at BCDC, Stokes approached him and proposed that they work together to cover up their crimes. Howell agreed. In subsequent conversations, he and Stokes discussed identifying and silencing potential government witnesses.[7]

---

[6]    Askia also attempts to make his Apprendi argument through two other cases. U.S. v. Shamblin, 323 F. Supp. 2d 757 (S.D.W.Va. 2004), and U.S. v. Smith, 125 F. Supp. 2d 486 (S.D.Fl. 2000). Shamblin has been overruled, Smith was overruled in part, and, in any case, are neither binding nor persuasive.

[7]    The record does not reflect the exact dates of the meetings, or the exact number. However, Howell testifies to meeting often - approximately every other day. (Tr. 1857).

In a letter written in late May 1999, Howell told the government he wanted to plead guilty.[8] In response, the Government issued a proffer letter on June 8, 1999. Howell entered a plea agreement on June 25, 1999.[9]

On June 29 and 30, 1999, Howell testified at the trial of Askia, Stokes, Linton, and Williams, pursuant to his plea agreement. He testified that Stokes, Askia, and Williams were drug dealers. He also testified about his jailhouse conversations with Stokes. The Court admitted Howell's testimony about the jailhouse conversations under Federal Rule of Evidence ("FRE") 801(d)(2)(E), which states that a statement is not hearsay if it is made by a co-conspirator of the party during the course and in furtherance of the conspiracy.

### 2. Askia's Arguments

On appeal, Ward argued that Howell's testimony was inadmissible against Askia under FRE 801(d)(2)(E) because Howell and Stokes were engaged in a conspiracy that was separate and distinct from any conspiracy involving Askia (the "separate conspiracy argument"). Askia now claims that Ward should instead have argued that the jailhouse conversations were part of an ongoing drug conspiracy, but that Askia had previously withdrawn from the conspiracy (the "withdrawal argument").

Askia argues that Ward should have presented the Fourth Circuit with the following evidence of his withdrawal from the conspiracy:

---

[8] Tr. at 1779. In a letter postmarked June 1, 1999, Howell informed the Court that he did not wish to proceed with trial.

[9] The plea agreement was dated June 18, 1999, but was not signed until seven days later. It appears that the BCDC meetings took place before Howell agreed to appear as a Government witness. Askia has offered nothing to suggest that the meetings took place at a later time.

(i) two court orders setting the conditions of his pre-sentence release from custody (Docket Nos. 42 and 58). In these orders, dated August 10, 1998 and November 20, 1998, Askia promised to refrain from (i) committing any offense in violation of federal, state, or local law, and (ii) contacting co-defendants and potential government witnesses.

(ii) Howell's testimony about a jailhouse conversation in which Stokes reported that he was mad at Askia because Askia was contemplating pleading to a lower sentence and had allowed another member of the Stokes Organization to cooperate with the government. (Tr.1911-12). Ward's appeal brief stated that Askia was "not mentioned" in the conversations between Stokes and Howell.

### B. Standard

Ineffective assistance of counsel claims are evaluated under the two-prong test announced in Strickland v. Washington, 466 U.S. 668, 687 (1984). To prevail, Askia must show both (i) that Ward's performance was deficient, and (ii) that the deficiency prejudiced him. Id. To satisfy the "performance" prong, Askia must overcome the strong presumption that Ward was not ineffective, and demonstrate that Ward's performance "fell below an objective standard of reasonableness." Id. at 688. As for the second prong, Askia must show that but for his attorney's deficient performance, the result of the proceedings would have been different. See id. at 687. If Askia fails to demonstrate sufficient prejudice, the Court need not address the "performance" prong. See Strickland, 466 U.S. at 697.[10]

### C. Analysis

#### 1. Askia was not Prejudiced

---

[10] In fact, the Supreme Court encourages courts, when possible, to dispose of ineffective assistance of counsel claims without resort to a performance analysis. Id. ("The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.")

Askia has failed to establish that if Ward had pursued the withdrawal argument, the Fourth Circuit would have (i) determined that the BCDC conversations were inadmissible hearsay because Askia had withdrawn from the conspiracy prior to the conversations, and (ii) vacated Askia's conviction.

Once a conspiracy is established, it is presumed to continue unless or until the defendant shows either that it was terminated, or that he withdrew from it. Hyde v. U.S., 225 U.S. 347, 369-70 (1912). To establish withdrawal, Askia must put forward evidence of affirmative acts that were inconsistent with the objects of the conspiracy and were communicated in a manner reasonably calculated to reach his co-conspirators. United States v. Walker, 796 F.2d 43, 49 (4th Cir. 1986). Askia must show that he "acted to defeat or disavow the purposes of the conspiracy." United States v. West, 877 F.2d 281, 289 (4th Cir. 1989).[11]

When Askia was released from pretrial detention, he was required to sign a form setting forth conditions. Among them was an agreement that Askia would not communicate with his alleged co-conspirators or commit any crime. Askia contends that by signing the form, and making the promise, he thereby withdrew from the conspiracy. It would be impossible to remain in a drug conspiracy without communicating with his fellow conspirators and committing crimes, he reasons. This argument

---

[11]    See also United States v. Vaughn, 433 F.3d 917 (7th Cir. 2006) ("Withdrawal requires an affirmative act . . . such as making a full confession to the authorities or communicating to co-conspirators that one has abandoned the enterprise."); United States v. Kilby, 443 F.3d 1135 (9th Cir. 2006) ("A conspirator can withdraw from a conspiracy by: (1) disavowing the unlawful goal of the conspiracy, (2) affirmatively acting to defeat the purpose of the conspiracy, or (3) taking definite, decisive, and positive steps to disassociate himself from the conspiracy."); United States v. Julian, 427 F.3d 471 (7th Cir. 2005) ("It is not all that easy to withdraw from a conspiracy and it is the defendant's burden to show that he did.").

is creative, but unavailing. There is no evidence that Askia lived up to his agreement or that it was sincere when he made it. By its terms, the agreement was only temporary and would end when the period of pretrial release ended. Moreover, there is no proof that Askia ever communicated this withdrawal to his confederates. Hence, the requirements for a withdrawal are not met.

Askia also maintains that he withdrew from the conspiracy by telling Stokes that he was considering pleading guilty. This argument likewise fails. Askia did not plead guilty, enter into a plea agreement, become a government agent, or agree to cooperate with the government. Merely telling Stokes that he was considering a plea of guilty does not constitute the clear and affirmative act of withdrawal that the law requires.

### 2. Ward was Not Ineffective

Because Askia has failed to establish prejudice, the Court need not address the ineffectiveness prong of the Strickland analysis. Nonetheless, the Court finds that Askia has failed to establish that Ward was ineffective. Ward acted reasonably when he elected not to pursue an argument that, for the reasons outlined above, would have been unavailing. Moreover, even if Askia could show he suffered prejudice, Ward was not ineffective for pursuing the "separate conspiracy" theory to exclude the Howell testimony. The relevant inquiry is not whether one strategy was better than the other,[21] but whether, in light of the circumstances, Ward's strategy was reasoned. Ward quite reasonably chose to pursue a separate conspiracy theory as a vehicle for excluding the BCDC "cover up" evidence.

---

[21] Strickland, 466 U.S. at 689. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."

Although this strategy was unsuccessful, it was not unreasonable. Accordingly, Ward did not provide ineffective assistance.

### III.   Conclusion

For the foregoing reasons, the Court will, by separate order, DENY Askia's § 2255 motion to vacate his sentence and DIRECT the Clerk to CLOSE the case. Should Askia choose to appeal the judgment of this Court to the United States Court of Appeals for the Fourth Circuit, he is ADVISED that he must file a notice of appeal with the Clerk of this Court within 60 days after the date of the entry of the judgment order. Upon reviewing the notice of appeal, this Court will either issue a certificate of appealability or state why a certificate should not issue in accordance with Federal Rule of Appellate Procedure 22(b)(1). If this Court should deny certification, Askia may request a circuit judge of the United States Court of Appeals for the Fourth Circuit to issue the certificate.

Dated this 26th day of July, 2007.

/s/
Benson Everett Legg
Chief Judge