**OFFICE OF THE FEDERAL PUBLIC DEFENDER**
**DISTRICT OF MARYLAND**
SOUTHERN DIVISION
6411 IVY LANE, SUITE 710
GREENBELT, MARYLAND 20770
TEL: (301) 344-0600
FAX: (301) 344-0019

_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

AUG – 7 2008

AT GRE ___
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____ DEPUTY

JAMES WYDA
FEDERAL PUBLIC DEFENDER

PARESH S. PATEL
STAFF ATTORNEY

**Via Hand-Delivery**

August 7, 2008

**Crack Reduction -    Updated Status Report**
                **Supplemental Motion for Reduced Sentence Under 18 U.S.C. § 3582(c)**

The Honorable Benson E. Legg
United States District Court
 for the District of Maryland
101 West Lombard Street
Baltimore, Maryland 21201

            Re:    *United States v. Antwan Askia*
                    Case No: L-98-258_____

Dear Judge Legg:

        Please accept and docket this letter as an updated status report and a supplement to Mr. Askia's pending *pro se* motion seeking a reduced sentence under 18 U.S.C. § 3582(c) and Amendments 706 and 711.

        The United States Probation Office has reviewed Mr. Askia's case and rendered the opinion that he is not eligible to seek a reduced sentence because his base offense level is 43, which was determined by a cross-reference to the First Degree Murder guideline found at U.S.S.G.§ 2A1.1." However, a careful reading of 18 U.S.C. § 3582 does not preclude Mr. Askia from seeking a reduction in sentence. This Court has jurisdiction to reduce Mr. Askia' sentence under 18 U.S.C. § 3582(c) because his sentence was "based on" the crack guideline, which has been subsequently lowered. Because jurisdiction is triggered under § 3582(c), this Court is free to reduce Mr. Askia' sentence consistent with <u>United States v. Booker</u>, 543 U.S. 220 (2005) for all the reasons explained below. In light of this authority, Mr. Askia respectfully requests that this Court reduce his current sentence of 240 months to **180 months**. This sentence is "sufficient but not greater than necessary" under 18 U.S.C. § 3553(a). If this reduction is granted Mr. Askia will be eligible for release sometime in **2012**.

I.    **Mr. Askia's Original Sentencing**

Mr. Askia was initially assigned a base offense level of 38 for being involved with 1.5 kilograms of crack. This base offense level was adjusted by two levels for the possession of a weapon in the furtherance of a drug conspiracy under U.S.S.G. § 2D1.1(b)(1). This resulted in adjusted base offense level of 40. However, a new base offense level of 43 was then assigned to Mr. Askia under cross reference § 2A1.1 for First Degree Murder because a victim was killed during the course of the conspiracy. The Court departed from this offense level back down to 40 because Mr. Askia did not cause the death of the victim intentionally or knowingly. This number was then increased by two offense levels for obstruction of justice for a final offense level of 42. With zero criminal history points, Mr. Askia's criminal history category was I. This resulted in a sentencing guideline range of 360 months - life. However, the court imposed a 240-month sentence because it was the statutory maximum for Mr. Askia's offense of conviction under Apprendi v. United States, 530 U.S. 466 (2000).

II.    **Mr. Askia's Sentence Was "Based On" a Sentencing Range That Has Been Lowered under the Crack Amendment.**

To be eligible to seek a reduced sentence under § 3582, a defendant need only have been "sentenced to a term of imprisonment **based** on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c) (emphasis added). It **does not require** that the original sentence be **based solely** on a guideline that the Commission has subsequently lowered.

Here, Mr. Askia's 240-month sentence was "based" on the amended crack guidelines at U.S.S.G. § 2D1.1. [1] This is because the crack guideline informed the court's sentence in Mr. Askia's case. In particular, although the guidelines assigned Mr. Askia a base offense level of 43 under the murder guideline, the court downward departed by three levels under § 2A1.1, Commentary, Application Note 1 because Mr. Askia did not intentionally or knowingly cause the death at issue in the case. However, this downward departure was **limited by the crack guideline**. Application Note 1 prohibits a court from departing below the applicable offense level for the underlying offense. Because Mr. Askia's adjusted base offense level for his underlying crack offense under the crack guideline, § 2D1.1, was 40 (based on 1.5 kilos of crack), the court only had the authority to downward depart down to offense level 40. Thus, Mr. Askia's sentencing range was driven by the crack guideline, and in turn, "based on" the crack guideline. This sentencing range has been subsequently lowered under the crack amendment because it reduces Mr. Askia's adjusted base offense level from 40 to 38. Taking into account the two-point increase for obstruction of justice, Mr. Askia's final offense level under the amended crack guideline would be 40. With a criminal history category of I, this changes Mr. Askia's sentencing range from 360-life to 292-365 months in prison. Accordingly, Mr. Askia

---

[1] The definition of "based" is instructive - to serve as a "starting point," "the foundation," or the "fundamental" part of something. *See Merriam-Webster, Online* ("base" as a noun and verb) (available at http://www.m-w.com/dictionary).

was sentenced **"based on a sentencing range that has been subsequently lowered,"** and this Court has jurisdiction to reduce Mr. Askia's sentence under 18 U.S.C. § 3582(c).

### III.    This Court Has the Authority to Reduce Mr. Askia's Sentence Beyond That Recommended by the Amended Guideline.

Even though the amended guideline range still remains above the 240-month statutory maximum sentence imposed by the Court, once jurisdiction is authorized under 18 U.S.C. § 3582(c), this Court has the discretion to reduce Mr. Askia' sentence below this sentence consistent with *Booker*, 18 U.S.C. § 3553(a), the advisory guidelines, and the rules of statutory construction.

While the Sentencing Commission has sought to limit the extent of reductions under § 1B1.10, that guideline is only advisory under United States v. Booker, 543 U.S. 220 (2005). Once the Sentencing Commission makes a guideline retroactively applicable, a court may reduce the term of imprisonment. The amount of reduction is governed by 18 U.S.C. § 3553(a), not the guidelines. United States v. Booker, 543 U.S. 220 (2005); United States v. Hicks, 472 F.3d 1167 (9th Cir. 2007).

An analysis of how Booker's tinkering with 18 U.S.C. § 3553(b) affected the weight a court must give the guidelines under 18 U.S.C. § 3553(a)(4) shows how Booker altered the application of 18 U.S.C. § 3582(c) - the sentence reduction statute. A similar analysis of the Commission's enabling legislation shows why the Commission's attempt to limit the extent of a reduction is contrary to the purposes of sentencing. In addition, post-Booker developments in the construction of other sentence reduction provisions, including 18 U.S.C § 3553(e), § 3553(f), and Rule 35(b), show that Booker extends to motions to reduce sentence under 18 U.S.C. § 3582(c).

Indeed, two district courts recently turned to Booker in granting sentence reductions under 18 U.S.C. § 3553(a) beyond that recommended by the amended crack guidelines. These courts held that the advisory guidelines could not limit the extent of a reduction under 18 U.S.C. § 3582(c). These courts made clear that under Booker courts are free to grant any reduction consistent with 18 U.S.C. § 3553(a). See Exhibit A (United States v. Ragland, Cr. No. 98-196-01 (D. D. C. July 31, 2008) (granting a reduction of greater than two offense levels in 3582 proceeding even though defendant was originally sentenced as a career offender with an overrepresentation departure); Exhibit B at 11-17 (United States v. Edward Melvin, Cr. No. 04-60192-CR-MGC (D.S.D.Fla. May 14, 2008) (guidelines cannot be treated as mandatory in context of § 3582(c) proceeding). For all the reasons pointed out below, these courts were correct in their reasoning.

**A.**    **18 U.S.C. § 3582 Must Be Read in Light of <u>Booker</u> and *In Pari Materia* With Related Sentencing Provisions.  When So Read, § 3582 Gives this Court Authority to Determine the Extent of a Sentence Reduction.**

Section 3582(c)(2) of Title 18 defines the scope of this Court's authority to reduce a sentence.  That section provides:

> In the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o), upon motion of the defendant, the director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Section 3582 must be construed in light of existing case law and *in pari materia* with other sentencing provisions that <u>Booker</u> fundamentally altered, particularly 18 U.S.C. § 3553(a).  Section 3582 requires that a court consider the § 3553(a) factors in reducing a term of imprisonment.  The Commission, through U.S.S.G. § 1B1.10, has sought to severely constrain a court's authority to consider the 3553(a) factors by placing limits on the extent of a reduction.  <u>See</u> U.S.S.G. § 1B1.10 (limiting reduction to "the minimum of the amended guideline range," or a comparably lesser reduction from the amended guideline range in cases where the original sentence was lower than the original guideline range).  In adopting § 1B1.10, the Commission ignored the Supreme Court's decision in <u>Booker</u>.  <u>Booker</u> marked a sea change in federal sentencing, transforming it into a discretionary system with advisory guidelines.  Yet, the Commission chose to treat § 1B1.10 as an unchanged island - the sole survivor of the pre-<u>Booker</u> mandatory regime.

The Commission failed to consider how <u>Booker</u> fundamentally altered § 3553(a), by excising from the statute § 3553(b), and how that alteration affects the reading of § 3582.  A closer look at the language of §§ 3582, 3553 and <u>Booker</u> shows why the defendant's reading of § 3582 gives meaning to every word in the statute and preserves Congressional intent while also giving effect to <u>Booker</u>.

Section 3582 contains a multi-step analysis.  First, the Court must ask if the defendant was "sentenced based on a sentencing range that has subsequently been lowered by the Sentencing Commission, pursuant to 28 U.S.C. § 994(o)" (giving the Commission authority to revisit guidelines).  Second, the Court must ask if a reduction is consistent with applicable policy statements issued by the Sentencing Commission.  This question traditionally asked whether the Commission made the amendment retroactive.  <u>See</u> <u>United States v. McHan</u>, 386 F.3d 620, 622

4

(4th Cir. 2004 ). If the answer to the first two questions is yes, the door to a sentence reduction is opened. The Court may then reduce the sentence "after considering the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c).

It is this last provision that <u>Booker</u> fundamentally altered. Before <u>Booker</u>, many of the § 3553(a) factors were "not applicable" because § 3553(b) made the guidelines - factor 3553(a)(4) - the controlling factor.[2] <u>Booker</u>, however, excised 3553(b) from the statute. 543 U.S. at 223-24. Hence, post-<u>Booker</u>, with § 3553(b) excised, all of the 3553(a) factors are applicable and the Court is not bound to apply only factor 3553(a)(4) and follow the guidelines. <u>Kimbrough v. United States</u>, 128 S.Ct. 558, 570 (2007) ("[t]he statute, as modified by <u>Booker</u>, contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing"). Hence, when § 3582 is read *in pari materia* with the post-<u>Booker</u> reconstruction of §§ 3553(b) and 3553(a), the Court must consider the guidelines as a § 3553(a)(4) factor, but must also consider all of the other 3553(a) factors in deciding the extent of a sentence reduction. <u>Virginia Inter. Inc. v. Edwards</u>, 398 F.3d 313, 317 (4th Cir. 2005) (neighboring statutory subsections that refer to the same subject matter "must be read ... as if they were a single statute").

The Court's holding in <u>Booker</u> does not preserve § 3582 as the "sole survivor" of the mandatory guideline regime. When the Court excised § 3553(b)(1) from the statute, along with 18 U.S.C. § 3742(e), it did not carve out exceptions for any provision of the Sentencing Reform Act. The Court unequivocally stated: "So modified, the federal sentencing statute, <u>see</u> Sentencing Reform Act of 1984 (Sentencing Act), as amended, **18 U.S.C. § 3551 *et seq.*, 28 U.S.C. § 991 *et seq.*,** makes the Guidelines effectively advisory." 543 U.S. at 245. (emphasis added). 18 U.S.C. § 3582 - part of the "*et seq.*" to § 3551 - and 28 U.S.C. § 994(u) - part of the "*et seq.*" to § 991 - plainly fall within the reach of <u>Booker</u>'s holding. Hence, in considering the § 3553(a) factors when deciding the extent of a sentence reduction under 18 U.S.C. § 3582, the Court must consider the guidelines, but is not bound by them.

---

2

    <u>Booker</u> explains the interplay of the two provisions as follows: "While subsection a) of § 3553 of the sentencing statute lists the Sentencing Guidelines as one factor to be considered in imposing a sentence, subsection b) directs that the court "shall impose a sentence of the kind, and within the range" established by the Guidelines, subject to departures in specific, limited cases." *Booker*, 543 U.S. at 234.

**B.      28 U.S.C. § 994(u), Which Originally Gave the Commission the
Authority to Specify the Amount of a Sentence Reduction,
Must be Read in Light of <u>Booker</u> and *In Pari Materia* with
Other Provisions in the Enabling Legislation.**

The Commission's enabling legislation, which granted it the authority to "specify in what circumstances and by what amount" sentences should be reduced, 28 U.S.C. § 994(u), does not limit this Court's discretion to determine the extent of a sentence reduction.[3]  As more fully discussed above, § 994(u) was not exempted from *Booker's* sweeping holding.  In addition, the Commission's enabling legislation contains directives that the Commission failed to follow in adopting U.S.S.G. § 1B1.10 and seeking to set limits on the amount of a reduction under § 3582.

Congress directed that the "Commission . . . consistent with all pertinent provisions of any Federal statute **shall promulgate . . . general policy statements [that] would further the purposes of sentencing set forth in section 3553(a)(2)** . . . including the appropriate use of . . . the sentence modification provisions set forth in section[] 3582(c)." 28 U.S.C. § 994(a)(2)(C) (emphasis added).  Section 1B1.10 does not "further the purposes of sentencing set forth in section 3553(a)(2)."

First, § 1B1.10 cannot be said, for all cases, to "further the purposes of sentencing set forth in section 3553(a)(2)" because the Commission itself has acknowledged that the crack amendments, made retroactive through § 1B1.10, are only a "partial remedy" to the crack/cocaine disparity.  <u>Kimbrough</u>, 128 S.Ct. at 569 (citing United States Sentencing Commission, Report to Congress: Cocaine and Federal Sentencing Policy 8 (May 2007)) (available at http://www.ussc.gov/r_congress/ cocaine2007.pdf).  Thus, even though the Commission itself has acknowledged that greater reductions in sentence may be in order even to correct the crack/cocaine disparity, it has sought to limit a court's ability to more fully correct that disparity in a § 3582 proceeding.

Second, the Commission arbitrarily placed limits on the extent of the reduction, and the kind of information a court should consider in deciding to grant a reduction.  The Commission's limits on a court's ability to further the purposes of sentencing work one way - in favor of the government.  For example, application note 1(B) expressly seeks to limit a court's consideration of many of the § 3553(a)(2) factors through limits and prohibitions placed on the extent of the reduction.  Application notes 1(B)(ii) and (iii), allow the Court to consider only "the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment," and "post-sentencing conduct of the defendant that occurred after imposition of the original term of imprisonment."  Both of these things, however, can only

---

[3]      The Commission's enabling legislation is directed to the Commission, not the Court.  <u>See</u> United States v. Sanchez, 517 F.3d 651 (2d Cir. 2008).

be considered in determining whether "a reduction is warranted" in the first place and "the extent of such a reduction ... within" the amended guideline range.

The application notes leave no room for a court to give a sentence below the amended guideline range (or less than whatever reduction is comparable to one given at the original sentencing), that "further[s] the [other] purposes of sentencing set forth in section 3553(a)(2)," such as "the need to promote respect for the law," "provide just punishment," or provide the defendant with training, medical care, or treatment "in the most effective manner."

In sum, § 1B1.10 does not accord with the Commission's statutory duties and purpose as set out in 28 U.S.C. § 994(a)(2)(C). Although the Commission has the authority to promulgate policy statements - without consulting experts, without notice and public comment, and without congressional review - that authority must be exercised in accordance with the Commission's statutory duties and the purposes of sentencing. When the Commission fails to properly exercise its authority, as it failed to do in promulgating § 1B1.10, the Court is free to reject it.

Considering the guidelines along with all of the other § 3553(a) factors when entertaining a motion for reduction of sentence, but not treating the guidelines as mandatory, "remains consistent with Congress' initial and basic sentencing intent. . . . [ ] to 'provide certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities ... [and] maintaining sufficient flexibility to permit individualized sentences when warranted.' 28 U.S.C. § 991(b)(1)(B)." Booker, 543 U.S. at 264.

   C.    **Booker Applies to All the Guidelines, Including U.S.S.G. §
         1B1.10, Even Though § 1B1.10 is a Sentence Reduction
         Provision that May Carry No Sixth Amendment Implications.**

Booker applies to § 1B1.10 even though it is a sentence reduction provision that may carry no Sixth Amendment implications. Booker made clear its applicability to all sentencing decisions, including sentencing reductions. The developing case law and changes in Federal Rule of Criminal Procedure 35(b) demonstrate this common understanding of Booker.

   *(i)    The Guidelines are not One-Way Levers That Remain Mandatory in Some
          Instances.*

Booker made clear that the guidelines are now advisory even if they do not implicate the Sixth Amendment. In Booker, the government argued that the guidelines could remain mandatory in cases that did not implicate judicial fact-finding to increase a defendant's sentence. The Court expressly rejected that argument.

> [W]e do not see how it is possible to leave the Guidelines as
> binding in other cases. For one thing, the Government's proposal
> would impose mandatory Guidelines-type limits upon a judge's

7

ability to reduce sentences, but it would not impose those limits upon a judge's ability to increase sentences. We do not believe that such one-way levers are compatible with Congress' intent. For another, we believe that Congress would not have authorized a mandatory system in some cases and a nonmandatory system in others, given the administrative complexities that such a system would create.[4]

543 U.S. at 266 (internal punctuation marks and citation omitted) (emphasis in original). See also id. at 248 ("we cannot assume that Congress, if faced with the statute's invalidity in key applications, would have preferred to apply the statute in as many other instances as possible"). See also Kimbrough, 128 S.Ct. at 564 ("under Booker, the cocaine Guidelines, like all other Guidelines, are advisory only, and that the Court of Appeals erred in holding the crack/powder disparity effectively mandatory").

(ii)    Developing Case law Applies Booker to Sentence Reduction Statutes.

A finding that § 1B1.10 is advisory would be consistent with other cases that have used the Booker rationale to render the guidelines advisory in other contexts involving sentence reductions with no Sixth Amendment implications. Chief among these cases is United States v. Hicks, 472 F.3d 1167, 1172-73 (9th Cir. 2007). In Hicks, the court held that district courts may "depart from the Guidelines when issuing new sentences under § 3582(c)(2)," acknowledging that "'a mandatory system is no longer an open choice.'" Id. at 1170 (citing Booker v. United States, 543 U.S. 220, 263 (2005)). Other courts are in accord in direct holdings and dicta. See United States v. Forty Estremera, 498 F.Supp.2d 468, 471-72 (D.P.R. 2007) (proper procedure in a post-Booker § 3582(c)(2) resentencing is to first calculate the amended guideline range and then "evaluate the factors set forth in 18 U.S.C. § 3553(a) to determine whether or not a guideline or non-guideline sentence is warranted"); United States v. King, 2007 WL 2703122 (D. Kan. Sept. 17, 2007) ("section 3582(c) can be invoked to grant the court the authority to resentence using the guidelines as advisory").

Other cases, construing statutes that permit the sentencing court to go below a statutory mandatory minimum, also find that Booker makes the guidelines advisory even if those statutes originally intended to make the guidelines mandatory. For example, in United States v. Allen, 450

---

[4]

Not applying Booker to § 1B1.10 raises some interesting procedural conundrums for appellate jurisdiction. For example, if Booker does not apply to § 1B1.10, then neither the government nor the defendant may have an appellate remedy in this case because the appellate review provisions of 18 U.S.C. § 3742(e) have been excised, but not replaced by the standard of review delineated in Booker. See United States v. Legree, 205 F.3d 724, 727 (4th Cir. 2000) (18 U.S.C. § 3742(a) provides appellate court jurisdiction over appeal of 3582 motion).

F.3d 565, 570 n.5 (4th Cir. 2006), the Fourth Circuit construed 18 U.S.C. § 3553(e) - a statute comparable to § 3582. Section 3553(e) permits a court to depart below a mandatory minimum sentence upon a government motion based upon the defendant's substantial assistance. The statute provides in relevant part:

> Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

18 U.S.C. § 3553(e). Notwithstanding this mandatory language, and Booker' s focus on 18 U.S.C. § 3553(a), not § (e), the Fourth Circuit, post-Booker, has recognized that a court under § 3553(e) may give full consideration to the § 3553(a) factors and is not bound by the guidelines in imposing a sentence below the mandatory minimum. See also United States v. Mankins, 2007 WL 2319817 (D. Md. 2007) (J. Bennett) (reference in § 3553(e) to imposition of sentence "in accordance with the sentencing guidelines necessarily addresses the advisory nature of those guidelines" after Booker).[5]

All of these cases show that once the gate to a sentence below the mandatory minimum opens upon government motion, a court is free to exercise its discretion in imposing a sentence. It should look to the guidelines for guidance, but is not bound by them. A similar result should occur here. Once the gate to a reduced sentence opens upon the Commission's retroactive application of a lowered guideline, the Court must consult the guidelines in deciding the extent of any reduction, but is not bound by them. Once the gate to a reduced sentence opens under § 3582, the Court is bound only by the "overarching provision" in 18 U.S.C. § 3553(a), i.e., that the Court '"impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." Kimbrough, 128 S.Ct. at 568-69.

---

[5]

Other cases, construing § 3553(e), or the safety-valve provision at 18 U.S.C. § 3553(f) are in accord. See e.g., United States v. Villa-Lopez, 2008 WL 168667 (9th Cir. 2008) (unpub.) ("Following United States v. Booker, 543 U.S. 220 (2005), when a defendant qualifies for the safety valve, the district court is statutorily required to apply the Guidelines in an advisory manner along with the other factors contained in 18 U.S.C. § 3553(a)); United States v. Bolano, 409 F.3d 1045, 1047 (8th Cir. 2005) (same); United States v. Boyd, 496 F. Supp. 2d 977, 980 (D. Ark. 2007) (government agreed with defendant "that the Guidelines are advisory in the safety valve setting, just as they are in all other sentencing settings, and that the safety valve provision does not mandate a sentence within the [guidelines] range;" court held that eligible defendant can be sentenced below the advisory guideline range that is "sufficient but not greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2)"); United States v. Cherry, 366 F. Supp.2d 372, 376 (E.D. Va. 2005) (same).

*(iii)*    *The Judicial Conference of the United States has Recognized that Booker Applies to Post-Sentencing Proceedings to Reduce a Sentence.*

A finding that section 1B1.10 is advisory would be consistent with current Rule 35(b) - a post-sentencing reduction provision. The Judicial Conference's Advisory Committee on Criminal Rules acknowledged that Booker made the guidelines advisory in the context of a post-sentencing motion for reduction of sentence under Rule 35(b) of the Federal Rules of Criminal Procedure. The current version of Rule 35 (b), effective December 1, 2007, provides:

> Upon the government's motion made within one year of sentencing, the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person.

Fed. R. Crim. P. 35(b)(1). Before the December 1st amendment, Rule 35(b) provided that the Court could reduce a sentence after the defendant provided substantial assistance if "reducing the sentence accord[ed] with the Sentencing Commission's guidelines and policy statements." The 2007 amendment eliminated this language. The Advisory Committee Notes to the 2007 revision explain the purpose of the amendment:

> The amendment conforms Rule 35(b)(1) to the Supreme Court's decision in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). In Booker, the Court held that the provision of the federal sentencing statute that makes the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), violates the Sixth Amendment right to jury trial. With this provision severed and excised, the Court held, the Sentencing Reform Act "makes the Guidelines effectively advisory," and requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a) (Supp.2004). Id. at 245-46, 125 S.Ct. 738. Subdivision (b)(1)(B) has been deleted because it treats the guidelines as mandatory.

Fed. R. Crim. P. 35 advisory committee's notes (2007 amendments).

The Committee decided to conform Rule 35 to Booker after a subcommittee of the Advisory Committee on Criminal Rules reviewed whether the Court's decision in Booker required any amendments to the rules. Minutes of the Advisory Committee on Federal Rules of Criminal Procedure, April 4 & 5, 2008. The subcommittee believed that "strong arguments existed for amending," Rule 35, because the requirement that any reduction in sentence be in accordance with the guidelines "assume[s] that the sentencing guidelines are mandatory - a principle rejected the Supreme Court in Booker." Id.

The Advisory Committee approved, without objection, the <u>Booker</u> conforming amendments to Rule 35 notwithstanding the Sentencing Commission's request that the Committee "preserve[] the existing rule's explicit reference to the Sentencing Guidelines and questioned whether the <u>Booker</u> remedial opinion applied to post-sentencing proceedings." Minutes of the Advisory Committee on Criminal Rules, April 3 & 4, 2006.[6]

The history of the amendment to Rule 35 is instructive here for a number of reasons. Even though the Judicial Conference of the United States, through its advisory committee, carefully reviewed <u>Booker</u>'s affects on the sentence reduction provisions of Rule 35(b), and even though the Judicial Conference rejected the Commission's view that <u>Booker</u> did not apply to post-sentencing proceedings, the Commission nonetheless promulgated U.S.S.G. § 1B1.10 - claiming that <u>Booker</u> does not alter the mandatory nature of the guidelines under 18 U.S.C. § 3582(c).

The Commission's efforts to make the guidelines mandatory in the context of a § 3582 sentencing reduction should be rejected. Rule 35(b) and 18 U.S.C. § 3582(c) both represent limited circumstances under which a court may reduce a final sentence. Because the Judicial Conference read <u>Booker</u> as making the guidelines advisory in the context of a motion for reduction of sentence under Rule 35(b), it would promote uniformity in <u>Booker</u>'s application for this Court to conform § 3582 to <u>Booker</u> and read the language "consistent with applicable policy statements" as referring to advisory, not mandatory guidelines.

Just as the Supreme Court in <u>Booker</u> sought to preserve the Congressional intent behind the Sentencing Reform Act, this Court should preserve that intent, while recognizing the very real changes brought by <u>Booker</u>. The best way to do that is preserve Congress's intent to vest the Commission with the authority to determine when a guideline should be made retroactive, and thus trigger the Court's authority to reduce a sentence under 18 U.S.C.§ 3582, but permit the Court to determine the extent of any reduction through application of <u>Booker</u>.[7]

---

[6]

Also noteworthy is the absence of any objection by the  Department of Justice to the Committee's view that the sentence reduction provision of Rule 35 should be amended to conform with <u>Booker</u>. Indeed, after extensive notice and comment procedures, the Sentencing Commission apparently voiced the sole dissent to the Committee's proposal to conform Rule 35 to <u>Booker</u>.

[7]

That Congress has not amended 18 U.S.C. § 3582 to conform to <u>Booker</u>, but remained silent on the 2007 Rule 35(b) amendment, does not reflect a Congressional intent to leave the guidelines mandatory in the context of section 3582 motions. After <u>Booker</u>, Congress heeded the advice of many lawyers, academics, and organizations, and made no legislative response to <u>Booker</u>, choosing instead to "wait and see" how <u>Booker</u> played out in the  Courts. Hence, Congress has left intact all of the Sentencing Reform Act, even  those provisions <u>Booker</u> expressly excised.

11

**IV.   A 180 Month Sentence is "Sufficient, But not Greater than Necessary" under 18 U.S.C. § 3553(a).**

Mr. Askia has now been in prison for over nine years.  This is a very significant amount of time for an individual who had no criminal history whatsoever before the instant offense of conviction.  Over the past nine years, Mr. Askia has turned his life around in prison.  He has completed a 15 credit course in Business Management with Kent State University, where he earned all A's.  Additionally, he has completed real estate courses, a non-profit business course, an apprenticeship program for data entry clerks, and various other classes to ensure his success in society upon his release.  Mr. Askia is determined to become a positive role mode for children upon his release.  He dreams of opening a non-profit in which he can serve as a mentor for the youth and channel their energy into something positive and constructive.  Finally, he has strong tries to his family, who is deeply invested in his successful reintegration into society.  His family is willing to provide financial support and house Mr. Askia  until he is able to stand on his own feet.  In short, Mr. Askia's maturity  in prison combined with his strong ties to his family and community will assure that he stays on the right track and leads a productive life upon his release.  This warrants the modest reduction in sentence that he seeks here.  His current estimated release date is January 2017.  A  reduction of 60 months from his current sentence of 240 months would likely move his release date up to January 2012.

**Conclusion**

In summary, for the reasons stated here, and that may be presented in subsequent pleadings or at a hearing on this motion, Mr. Askia respectfully requests that this Honorable Court reduce his sentence to **180 months**, which is still a very significant sentence.  Such a reduction is consistent with the goals of sentencing set forth in 18 U.S.C. § 3553(a).

Finally, I respectfully request that this Court Order the Government to respond to Mr. Askia's motion within thirty days.  Enclosed is a Proposed Order.  Thank you for your attention to this matter.  If I can be of additional assistance, please let me know.

Sincerely,

Paresh S. Patel
Staff Attorney

cc:    Estelle Santana, USPO
       Barbara Sale, AUSA
       Antwan Askia, #33317-037

12

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,    )
                             )
          v.                 )    Criminal No. 98-0196-01 (PLF)
                             )
MARVIN J. RAGLAND,           )
                             )
          Defendant.         )
                             )

## OPINION AND ORDER

This matter is before the Court on defendant Marvin Ragland's *pro se* motion for

a sentence reduction under 18 U.S.C. § 3582(c)(2) ("Mot."). The Federal Public Defender's

Office entered an appearance on Mr. Ragland's behalf and filed a supplement to his *pro se*

motion ("Supp."). The government filed a response to the motion ("Opp."), and Mr. Ragland's

counsel filed a reply ("Rep."). The Court heard oral argument on June 27, 2008.

On August 28, 1998, Mr. Ragland pled guilty to one count of a 37-count

indictment, conspiracy to distribute and possess with intent to distribute 50 grams or more of

cocaine base ("crack cocaine") in violation of 21 U.S.C. § 846.[1] In his written plea agreement,

Mr. Ragland acknowledged that he was subject to a ten-year mandatory minimum sentence and

was accountable for more than 150 grams but less than 500 grams of cocaine base. *See* July 22,

1998 Plea Agreement.[2] As defense counsel accurately summarizes:

---

[1]    There were five defendants indicted together, and Mr. Ragland was charged in 21 of the
37 counts.

[2]    The transcript of the plea proceeding *could* be read as an acknowledgment that he was
accountable for as much as 255 grams of crack cocaine. *See* August 28, 1998 Tr. at 16-17.

> The Court sentenced Mr. Ragland for this offense on April 16, 1999. At that time, the Court found that although Mr. Ragland was a career offender within the meaning of § 4B1.1 of the United States Sentencing Guidelines, treating him as such would "overstate his criminal history and his likelihood of recidivism and that his criminal past is 'significantly less serious' than that of a typical career offender." Statement of Reasons, Attachment at 2. For these reasons, pursuant to § 4A1.3, the Court departed from the sentencing range applicable under the career offender provision, to the otherwise applicable range. *Id.* The Court found that absent the career offender provision the applicable sentencing range was 188 to 235 months (offense level 31, criminal history category VI). With these findings, the minimum sentence the law would allow the court to impose at the time of Mr. Ragland's original sentencing was a sentence of 188 months incarceration, and the Court imposed this then-mandatory sentence.

Supp. at 2.

Under Amendment 706 to the Sentencing Guidelines, which was made retroactive by Amendment 711 effective March 3, 2008, Mr. Ragland's offense level is a 29 and, at Offense Level 29, Criminal History Category VI, his new Guidelines range is 151 to 188 months. The United States does not oppose a reduction in Mr. Ragland's sentence to 151 months. Mr. Ragland, however, asks the Court to further reduce his sentence, considering all relevant sentencing factors under 18 U.S.C. § 3553(a), and impose a new sentence of 120 months – the statutory mandatory minimum sentence for the crime to which he pled guilty – by varying from the new Guidelines range under *United States v. Booker*, 543 U.S. 220 (2005). The United States opposes this request for a further reduction, and argues that the Court has no authority to reduce Mr. Ragland's sentence below 151 months, the bottom of his amended Guidelines range. The question presented is whether the Court may vary from an amended Guidelines sentencing range under *Booker* when granting a motion for a reduction in sentence under 18 U.S.C. § 3582(c)(2).

2

## I. FRAMEWORK

28 U.S.C. § 994(o) provides that the "Commission periodically shall review and revise, in consideration of comments and data coming to its attention, the guidelines promulgated pursuant to the provisions of this section." 28 U.S.C. § 994(o). 28 U.S.C. § 994(u) provides: "If the Commission reduces the term of imprisonment recommended in the guidelines applicable to a particular offense or category of offenses, it shall specify in what circumstances and by what amount the sentence of prisoners serving terms of imprisonment for the offense may be reduced." 28 U.S.C. § 994(u).

18 U.S.C. § 3582 provides that the Court "may not modify a term of imprisonment once it has been imposed" with three exceptions, one of which reads:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2).[3] It is within the Court's discretion whether to grant a Section 3582 motion – that is, even if a defendant's Guidelines range has been lowered, the Court, in its discretion, may deny the motion.

Section 3582 is deemed in some Circuits to be jurisdictional – that is to say, a

---

[3]       The other two exceptions, not relevant here, are upon the motion of the Director of the Bureau of Prisons (pursuant to Section 3582(c)(1)(A)) and under Rule 35 of the Federal Rules of Criminal Procedure (pursuant to Section 3582(o)(1)(B)).

district court does not have jurisdiction to modify a sentence other than in compliance with this provision. *See, e.g., United States v. Julien*, 550 F. Supp. 2d 138, 139 (D. Me. 2008) (noting that "this statutory exception to the final judgment rule limits the Court to sentence reductions that are 'consistent with applicable policy statements issued by the Sentencing Commission.' 18 U.S.C. § 3582(c)(2). In the Court's assessment, this language regarding sentence reductions amounts to a limit on the Court's jurisdiction.") (citations omitted); *see also United States v. Regalado*, 518 F.3d 143, 150-51 (2d Cir. 2008) (referring to Section 3582 as jurisdictional). The D.C. Circuit, however, has "question[ed]" such a reading, and has expressly left open the question of whether Section 3582 is jurisdictional – or, rather, is a "claims-processing rule." *United States v. Smith*, 467 F.3d 785, 788 (D.C. Cir. 2006).

The applicable policy statement issued by the Sentencing Commission with respect to the retroactive application of reduced Sentencing Guidelines is found in Section 1B1.10 of the United States Sentencing Guidelines. The Sentencing Commission lists those amendments that it intends to have retroactive application in subsection (c). Section 1B1.10(a)(2)(B) notes that if a retroactively applicable amendment "does not have the effect of lowering the defendant's applicable guideline range" then a reduction in the defendant's term of imprisonment is "not consistent with the policy statement" and therefore "is not authorized." U.S.S.G. § 1B1.10(a)(2)(B). The Guidelines policy statement in Section 1B1.10 – as amended effective March 3, 2008 – also provides:

> In determining whether, and to what extent, a reduction in the defendant's term of imprisonment under 18 U.S.C. 3582(c)(2) and this policy statement is warranted, the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection

4

(c) had been in effect at the time the defendant was sentenced. In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected.

U.S.S.G. § 1B1.10(b)(1).

The policy statement further provides that "the court shall not reduce the defendant's term of imprisonment under 18 U.S.C. 3582(c)(2) and this policy statement to *a term that is less than the minimum of the amended guideline range*[,]" U.S.S.G. § 1B1.10(b)(2)(A) (emphasis provided), and that proceedings under 18 U.S.C. § 3582(c)(2) "do not constitute a full resentencing of the defendant." U.S.S.G. § 1B1.10(a)(3). In short, the policy statement clearly is intended to limit sentence reductions to those provided for in the applicable amendment – in this case, to the two-level offense level reduction provided for crack cocaine offenses, and none other ("and shall leave all other guidelines application decisions unaffected."). It also clearly is intended to assure – by stating expressly that the mechanism provided by the retroactive amendment is not "a full resentencing" and that any sentence reduction may not be "less than the minimum of the amended guidelines range" – that the Court may not "vary" (in the *Booker* sense) below an amended Guidelines sentence.

## II. DISCUSSION

As noted, there are only three grounds on which a defendant can file a motion under Section 3582 – upon motion of the Bureau of Prisons, under Rule 35, or, as in this case, when the movant "has been sentenced to a term of imprisonment based on a sentencing range

5

that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2).[4]

It is completely uncontroversial to note that *Booker* is not itself *grounds for* a

Section 3582(c) motion for a reduction in sentence, and defense counsel does not suggest that it

is. That is just another way of saying that the holding of *Booker* is not retroactive to cases in

which the judgment is final. *See, e.g., In re Fashina*, 486 F.3d 1300, 1306 (D.C. Cir. 2007)

(*Booker* is not retroactive to cases in which the judgment is final). Some of the cases cited by the

government in its brief – not all, but several – stand for this basic proposition. *See, e.g., United*

*States v. Quary*, No. 95-40083, 2008 WL 1766951 (D. Kan. April 15, 2008) (*Booker* itself is not

grounds to file a motion under Section 3582); *United States v. Jones*, No. 97-20005, 2007 WL

2703122 (D. Kan. Sept. 17, 2007) (same).

---

[4]    As defense counsel points out, the government cites numerous cases in which a Court determined that the recent amendment to the crack Guidelines *did not have the effect of lowering a defendant's sentence* (for various reasons such as statutory mandatory minimums, career offender status, or substantial assistance departures under Section 5K1.1). *See* Reply at 10-11 (citing many cases); *see, e.g., United States v. Roberson*, Criminal No. 1:CR-88-00173-01, 2008 WL 2020209, *2 (M.D. Pa. May 8, 2008); *United States v. Bellamy*, No. 6:01-cr-29-Orl-19GJK, 2008 WL 1930485, *3 (M.D. Fla. May 1, 2008); *Montes v. United States*, Criminal No. 04-242, 2008 WL 906079, *2 (S.D.N.Y. April 3, 2008); *United States v. Davis*, No. 2:01-cr-56-FTM-29DNF, 2008 WL 660277, *2 (M.D.Fla. March 6, 2008); *United States v. Veale*, Criminal No. 03-0167, 2008 WL 618176, *3 (N.D.N.Y. March 3, 2008); *United States v. Rivera*, 535 F. Supp. 2d 527 (E.D. Pa. 2008); *see also United States v. Swint*, 251 Fed. Appx. 765, 768 & n.1 (3d Cir. 2007) (unpublished) (Amendment 591 did not have the effect of lowering defendant's sentence; *dicta* that Section 3582(c)(2) does not entitle the defendant to a full resentencing).

As a result, the motions filed by the defendants in those cases did not fall within the exception found in Section 3582(c)(2) and were denied. In several of those cases, the court went on to opine that *Booker* would not be applicable to a Section 3582 proceeding – but in light of the fact that those defendants were not eligible to file a Section 3582 motion in the first place (because the amendment did not lower their Guidelines range) such statements are *dicta*. In several cases, the statement was made in a conclusory manner, without any legal analysis. Furthermore, in some of the cases on which the government relies, the court itself cited decisions that stand for a different proposition – a proposition with which this Court agrees – that *Booker* itself is not *grounds for* filing a Section 3582(c) motion.

6

Defense counsel acknowledges that her client is only before the Court because the Sentencing Commission decided to lower the sentencing range for crack cocaine offenses and to make that amendment retroactive, thus squarely triggering one of the three exceptions provided by Congress in Section 3582(c) to the prohibition on modifying a sentence after it is imposed. The question counsel presents is this: Once a defendant has a basis to file a motion under Section 3582(c)(2) – because the Commission has lowered the Guidelines under which the defendant was sentenced and made that amendment retroactive – does the holding of *Booker*, which made the Guidelines advisory, apply to the Section 3582 proceeding? In other words, once the Court is considering whether to exercise its discretion to reduce a defendant's sentence under Section 3582(c)(2), and considering – as it is instructed to do by Section 3582 – the Section 3553(a) factors in determining whether and to what extent to apply the reduction, must it treat the amended Guidelines range as mandatory, as it would have done prior to *Booker*, or may it vary from the amended Guidelines range if persuaded that there are factors under Section 3553(a) that justify not just a sentence at the low end of the new range but also a *Booker* variance?

In arguing that *Booker* does not apply to a Section 3582(c)(2) proceeding, the government first cites *United States v. Clarke*, 2008 WL 1913899, *1 (M.D. Fla. Apr. 28, 2008), which in turn quotes and cites an unpublished decision from the Eleventh Circuit, *United States v. Crawford*, 243 Fed. Appx. 476 (11th Cir. 2007) (not precedential). *See* Opp. at 9. This Court is not persuaded by *Crawford*, or any of the district court cases that cite to it, for several reasons: (1) the court in *Crawford* pointed out that the *Booker* question was not raised until the reply brief was filed, so it was "not properly presented" in that case; (2) the defendant was not eligible for a sentence reduction under the Guidelines Amendment at issue, so the discussion of *Booker* is

7

*dicta*; and, most importantly, (3) the court in *Crawford* held that *"Booker* is inapplicable" in the

sense that it "does not provide a jurisdictional basis to modify and reduce" the sentence.

*Crawford* therefore states, in *dicta*, that *Booker* is not *grounds for* a Section 3582 motion – but

says nothing about the question at issue in this case.

      A *Booker* variance below an amended Guidelines range is flatly inconsistent with

the Guidelines policy statement, and the intent of the Sentencing Commission when it amended

the crack guidelines to lower them and made that amendment retroactive.  That is apparent from

a plain reading of the March 3, 2008 amendment to the Commission's policy statement, Section

1B1.10.  For that reason, the government argues that a *Booker* variance is not permissible under

Section 3582(c)(2), which says that a reduction is allowed only "if such a reduction is consistent

with applicable policy statements issued by the Sentencing Commission."  18 U.S.C.

§ 3582(c)(2); *see also United States v. Julien*, 550 F. Supp. 2d at 139-40; *United States v. Osuna*,

Criminal No. 02-1327, 2008 WL 1836943, at *3 (E.D.N.Y. Apr. 22, 2008); *United States v.*

*Cruz*, Criminal No. 02-0725, 2008 WL 539216, at *2-5 n. 7 (E.D.N.Y. Feb. 27, 2008).  But,

despite these express efforts by the Commission to limit the Court's discretion by amending

Section 1B1.10, it is apparent to this Court that the Sentencing Commission cannot abrogate the

Supreme Court's constitutional decisions such as *Booker* and *Kimbrough*, 128 S.Ct. 558 (2007),

which made clear that the Guidelines could survive constitutional challenge only if they were

advisory.  *See also Neal v. United States*, 516 U.S. 284, 290 (1996); *Stinson v. United States*, 508

U.S. 36, 38 (1993) (Guidelines commentary authoritative only when it does not violate the

Constitution or a federal statute).

8

Since *Booker*, the only court of appeals to consider the question presented here is the Ninth Circuit in *United States v. Hicks*, 472 F.3d 1167 (9th Cir. 2007).[5] In *Hicks* the court of appeals "reverse[d] the district court and [held] that *Booker* applies to § 3582(c)(2) proceedings." *United States v. Hicks*, 472 F.3d at 1169. The court stated that "the clear language of *Booker* makes the range advisory," *id.* at 1170, and noted that the *Booker* court "emphasized that the Guidelines could not be construed as mandatory in one context and advisory in another." *Id.* The only response the government makes to defendant's reliance on *Hicks* is: "We disagree with this decision because its analysis is flawed." Opp. at 15. Because this Court finds the reasoning of *Hicks* persuasive, it reaches the opposite conclusion. In the context of a Section 3582(c)(2) motion for a reduction in sentence, an amended Guidelines range is advisory, just as all Guidelines are – in every context – after *Booker*. *See Kimbrough v. United States*, 128 S.Ct. at 564 (the "cocaine guidelines, *like all other guidelines*, are advisory only . . . .") (emphasis provided).

The only relevant difference between this case and *Hicks* is that the Commission amended Section 1B1.10, its policy statement, to make abundantly clear its view that a court could not reduce a defendant's sentence below an amended Guidelines range when acting under Section 3582(c)(2) – that is, the Sentencing Commission attempted to make the Sentencing Guidelines mandatory in the context of proceedings under Section 3582(c)(2). After the amendment to Section 1B1.10, any reduction in sentence that included a *Booker* variance below

---

[5]    This decision was rendered as the result of a different Guidelines amendment than the one at issue here, and the Court in *Hicks* did not have to confront a policy statement as explicit in its intent, because the Commission amended Section 1B1.10 when it made Amendment 706 retroactive via Amendment 711.

9

the amended Guidelines range would not be "consistent with applicable policy statements issued

by the Sentencing Commission" within the meaning of Section 3582(c)(2). But, as the Ninth

Circuit noted in *Hicks*, to the extent that a policy statement in the Guidelines contradicts a

Supreme Court decision interpreting the Sentencing Reform Act in light of the Constitution, it

must be that the policy statement has no effect. *See United States v. Hicks*, 472 F.3d at 1172-73.

The court stated:

> *Booker* makes clear that the Guidelines are no longer mandatory in
> *any* context – its effect is not restricted to the "de novo
> resentencing" which the government seeks to distinguish. *Booker*
> was not a mere statutory change which can be set aside to allow us
> to pretend it is [in Mr. Ragland's case, 1998] for the purpose of
> modifying Hicks' sentence; rather, it provides a constitutional
> standard which courts may not ignore by treating Guidelines ranges
> as mandatory in any context. Thus, to the extent that the policy
> statements are inconsistent with *Booker* by requiring that the
> Guidelines be treated as mandatory, the policy statements must
> give way.

*Id.* at 1173 (emphasis in original).

Other courts have reviewed the holding of *Booker* and agreed with the *Hicks*

court, concluding that the Section 1B1.10 policy statement could not, consistent with the

Constitution, have the effect of making the Guidelines mandatory when a sentence is modified

post-*Booker* under Section 3582(c)(2).[6] In one such recent case, Judge Kocoras stated:

---

[6]     It is true, as the government notes, that so far there are only a few opinions in
which district courts have followed *Hicks* and have held that once Section 3582 authorizes a
court to consider reducing a sentence, *Booker* applies. In addition to *United States v. Shelby*,
Criminal No. 95-69, 2008 WL 2622828, * 2 (N.D. Ill. June 30, 2008), discussed *infra*, Judge
Robertson issued a decision on July 29, 2008 reducing a sentence below the amended Guidelines
range. *See (Melissa) Hicks v. United States*, Criminal No. 00-0240, Slip Op. (D.D.C. July 29,
2008) (Robertson, J.). There also are two decisions by Judge Conway in the Middle District of
Florida. *See United States v. Barrett*, 2008 WL 938926 (M.D. Fla. April 7, 2008); *United States
v. Stokes*, 2008 WL 938919 (M.D. Fla. April 7, 2008). There also is a decision from Puerto Rico

In holding that a mandatory system is no longer an open choice, to
the extent that policy statements would have the effect of making
the Guidelines mandatory, *Booker* established that they must be
void. *Booker* emphasized that the Guidelines could not be
construed as mandatory in one context and advisory in another. As
a consequence, district courts are necessarily endowed with the
discretion to employ the § 3553 factors when issuing new
sentences under § 3582(c)(2). The ease and simplicity of
mandatory calculations can no longer stand as a substitute for the
evaluation of relevant factors necessary to a determination of just
punishment.

*United States v. Shelby*, Criminal No. 95-69, 2008 WL 2622828, * 2 (N.D. Ill. June 30, 2008)

(internal citations omitted). Judge Kocoras concluded: "[T]he better view is that policy

statements, like the substantive Guideline provisions, are advisory only and do not preclude

consideration of all of the sentencing factors of § 3553(a) in this case." *Id.* Although the

question was not presented in the case before him, Judge Lynch phrases a similar conclusion

nicely:

The effectiveness of these limitations is yet to be tested; it would
be, to say no more, ironic if the relief available to a defendant who
received a sentence that is now recognized to have been
unconstitutional because imposed under mandatory guidelines
based on non-jury fact findings and unwise because the guideline
under which he was sentenced was excessively severe, can be
limited by a still-mandatory guideline.

*United States v. Polanco*, No. 02 Cr. 442-02, 2008 WL 144825, at *2 (S.D.N.Y. Jan. 15, 2008);

*see also (Eric) Hicks v. United States*, Criminal No. 93-0097, 2008 WL 630067 (D.D.C. March

---

that was issued before this Amendment, and before Section 1B1.10 was amended, which follows
*Hicks* and holds that *Booker* applies to Section 3582(c)(2) proceedings. *See United States v.
Forty-Estremera*, 498 F. Supp. 2d 468, 471-72 (D.P.R. 2007). It is undoubtedly true that other
courts have reduced sentences as a result of Amendments 706 and 711 below an amended
Guidelines range in an oral decision that would not be easily found by counsel or by other courts.
The undersigned is aware of one such case. *See United States v. Melvin*, Criminal No. 04-60192,
Hr'g Tr. May 14, 2008 (S.D. Fla.).

11

6, 2008) (Robertson, J.).

The government points out that in 28 U.S.C. § 994(u), Congress has directed that the Commission "shall specify in what circumstances and by what amount the sentence of prisoners serving terms of imprisonment for the offense may be reduced." Opp. at 9-10. And, the government argues, Congress has directed in Section 3582(c)(2) that reductions must be consistent with the Commission's policy statement, which is found in Section 1B1.10. Because the Commission has provided in the policy statement that a reduction may not lower a defendant's sentence below the amended Guidelines range, to resentence a defendant below the amended range would be inconsistent not only with a pronouncement of the Commission, but also with the intent of Congress as exemplified in Section 3582(c) and Section 994(u). The government asserts that "the Commission, consistent with the authorization provided by Congress, has set a floor below which a reduced sentence may not fall." Opp. at 11. That floor, in the government's view, is the bottom of the amended Guidelines range. The Court is still not persuaded, however, because Congress by statute cannot abrogate a constitutional decision of the Supreme Court any more than the Sentencing Commission can in a policy statement. *See Neal v. United States*, 516 U.S. at 290.

Nor do the government's citation of *United States v. Pettiford*, 517 F.3d 584 (D.C. Cir. 2008) and *United States v. Wise*, 515 F.3d 207 (3d Cir. 2008), demonstrate that the Sentencing Commission has the authority to restrict the extent of sentencing reductions. *See* Opp. at 15-16. In each of these cases, the defendant requested relief under Section 3582(c)(2) as a result of Amendment 706 prior to the effective date (for retroactive application) of March 3, 2008. The D.C. Circuit in *Pettiford* simply noted that the defendant was "not yet eligible to be

12

considered for a reduced sentence" and affirmed the judgment on appeal, which was a direct

appeal, directing defendant to file a motion under Section 3582(c)(2) in the district court in the

first instance. *See United States v. Pettiford*, 517 F.3d at 594. There is no indication that the

question presented by this case – whether an amended Guidelines range is advisory or mandatory

once a district court is considering a properly-filed Section 3582(c)(2) motion – was argued to

the court of appeals or considered by it. Similarly, the Third Circuit in *Wise* simply noted that

because Amendment 706 would not be listed in Section 1B1.10(c) until March 3, 2008, the

Amendment was not retroactively applicable. *See United States v. Wise*, 515 F.3d at 221 n. 3.

There is, again, no indication that the instant question was presented or considered.[7]

       The government also argues that because *Booker* itself is not retroactive, it would

be unfair to apply *Booker* and the now-advisory Guidelines "to that subset of those defendants

whose sentences are being lowered under Amendment 706." Opp. at 19. Because of the way our

legal system treats final judgments, it happens frequently that constitutional decisions are not

retroactively applicable to cases in which there is a final judgment. The government maintains

that because of this non-retroactivity principle, it would be anomalous to give defendants who get

the benefit of a reduced sentence under Section 3582(c)(2) and the amended Guideline the added

benefit of *Booker*. But the real anomaly would be to sentence someone *today* under a system that

the Supreme Court declared unconstitutional more than three years ago. To treat the new

---

[7]     The Court understands that – because Guidelines amendments are made retroactive by
being added to subsection (c) of the policy statement in Section 1B1.10 of the Guidelines – an
argument could be made that just as the language in Section 1B1.10(b)(2)(A) ("the court shall
not reduce the defendant's term of imprisonment . . . to a term that is less than the minimum of
the amended guideline range") is advisory – which is today's holding – so might be the
retroactivity provision tied to Section 1B1.10(c). But that question is not before the Court here,
just as the instant question does not appear to have been presented in *Pettiford* or *Wise*.

13

amended Guidelines range as mandatory – just because the Commission issued a policy

statement explicitly attempting to make it mandatory – would be to repeat the constitutional error

of the pre-*Booker* system of mandatory Guidelines under which this defendant originally was

sentenced.  When the Court has the authority to consider whether to reduce someone's sentence

under Section 3582(c)(2) as the result of a retroactive Guidelines amendment lowering a

sentencing range, that sentence is no longer a "final judgment," and the post-*Booker* Guidelines

regime – an advisory Guidelines system – must apply.

   Finally, the government makes what can only be viewed as a semantic argument:

Because the statutory text of Section 3582(c)(2) suggests that a proceeding under that section is

not a "sentencing" – it is, they assert, a "sentence reduction" or "modification" – there is no

reason to apply *Booker*.[8]  The Court is not persuaded.  This argument was presented, discussed,

and rejected by the Ninth Circuit in *Hicks*.  *See United States v. Hicks*, 472 F.3d at 1171-72

("The dichotomy drawn by the government, where full re-sentencings are performed under an

advisory system while 'reduction proceedings,' or 'modifications,' rely on a mandatory Guideline

system, is false. . . .  Mandatory Guidelines no longer exist, in this context or any other.").  One

of the cases cited by the government, *United States v. Swint*, 251 Fed. Appx. 765, 768 & n.1 (3d

Cir. 2007) (unpublished), is a decision that states in *dicta* that Section 3582(c)(2) does not entitle

the defendant to a full *de novo* resentencing.  *Swint* lacks any persuasive analysis and came in the

context of a case where the amendment at issue did not have the effect of lowering the

defendant's Guidelines range.  Moreover, the D.C. Circuit – although in a different context – has

---

[8]  This argument was foreshadowed by the Commission itself, which amended Section
1B1.10 to provide that Section 3582(c)(2) proceedings "do not constitute a full resentencing of
the defendant."  U.S.S.G. § 1B1.10(a)(3).

recently referred to a Section 3582 proceeding as a "resentencing." *See United States v. Byfield,*
522 F.3d 400, 402 (D.C. Cir. 2008).[9]  In fact, no less an authority than the Advisory Committee
on Criminal Rules of the United States Judicial Conference thinks that proceedings under Section
3582(c)(2) constitute "resentencings." *See* FED. R. CRIM. P. 43, Advisory Committee's Note to
1998 Amendments ("Under [Section 3582(c)], a resentencing may be conducted as a result of
retroactive changes to the Sentencing Guidelines by the United States Sentencing
Commission . . . .").

        The Court having determined to exercise its discretion to lower Mr. Ragland's
sentence in accordance with Amendment 706, it first must calculate his amended Guidelines
range – 151 to 188 months – and then must consider the factors found in Section 3553(a) in
imposing an amended sentence upon Mr. Ragland, whether that sentence be within that range or
below it.  Because the hearing on June 27, 2008 dealt only with the legal issue discussed herein
and not the Section 3553(a) factors as they apply to Mr. Ragland, the Court will invite further
submissions from the parties on the issue of mitigation under Section 3553(a), the
appropriateness of the twenty to one crack/powder ratio discussed in *Kimbrough* and in *United*

---

[9]     More specifically, quoting "the leading case" on the issue of whether a Section 3582
motion is civil or criminal in nature, the D.C. Circuit said:

> Because the purpose of a § 3582 motion is resentencing, a motion
> under § 3582(c)(2) is undoubtedly a step in the criminal case.
> Similarly, because a sentencing court's consideration of a
> § 3582(c)(2) motion requires the court to reexamine the original
> sentence in light of changes to the applicable Guidelines . . . an
> order granting or denying such a motion is criminal in nature.

*United States v. Byfield,* 522 F.3d at 402 (quoting *United States v. Ono,* 72 F.3d 101, 102 (9th
Cir. 1995)).

*States v. Pickett*, 475 F.3d 1347, 1351-56 (D.C. Cir. 2007), and the amount of drugs the defendant in fact acknowledged responsibility for at the time of his plea or at sentencing.[10]

       Accordingly, there will be further argument – regarding the Section 3553(a) factors – on August 15, 2008 at 9:00 a.m. The parties' supplemental briefs shall be filed on or before August 11, 2008.

       SO ORDERED.

                             _____/s/_____
                             PAUL L. FRIEDMAN
                             United States District Judge

DATE: July 31, 2008

---

[10]    The plea and sentencing transcripts have only recently been transcribed.

Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case 04-60192-CR-MGC

THE UNITED STATES OF AMERICA,

                    Plaintiff,

        vs.

EDWARD MELVIN,                          MIAMI, FLORIDA
                                        MAY 14, 2008
                                        WEDNESDAY

            Defendant.

        TRANSCRIPT OF SENTENCING PROCEEDINGS
    BEFORE THE HONORABLE MARCIA G. COOKE
        UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:

            JULIA VAGLIENTI, A.U.S.A.
            500 E. Broward Blvd., 7th Floor
            Ft. Lauderdale, FL  33301 - 954-660-5689

FOR THE DEFENDANT:

            TIMOTHY CONE, A.F.P.D.
            CELESTE HIGGINS, A.F.P.D.
            Federal Public Defender's Office
            150 West Flagler Street
            Miami, FL  33130 - 305/536-6900

REPORTED BY:

            ROBIN M. DISPENZIERI, RPR
            Official Federal Court Reporter
            United States District Court
            301 North Miami Avenue, 6TH Floor
            Miami, FL  33128 - 305/523-5158

Draft Copy

Page 2

```
1                          PROCEEDINGS

2            COURTROOM DEPUTY:  This is a motion for reduction of

3    sentence in United States versus Edward Melvin, 04-60192.

4            THE COURT:  Appearing on behalf of the United States.

5            MS. VAGLIENTI:  Julia Vaglienti on behalf of the

6    United States.

7            THE COURT:  Appearing on behalf of Edward Melvin.

8            MR. CONE:  Timothy Cone, Assistant Federal Public

9    Defender, and at my right is Celeste Higgins from our office as

10   well.

11           THE COURT:  This is defendant's motion to reduce

12   sentence pursuant to 3582(c)(2)?

13           MR. CONE:  That is correct.

14           THE COURT:  Proceed, please, counsel.

15           MR. CONE:  Well, Your Honor, the defendant is in his

16   37th month of serving a 100-month sentence.  He has moved,

17   pursuant to the recent guideline amendment, for a two Level

18   reduction given the amendment's provision that crack cocaine

19   offenders are eligible for a two level reduction.  The

20   government has not opposed that portion of the motion, and

21   therefore it stands before you unopposed.

22           However, the defendant has asked for a further

23   reduction in sentence to time served.  The government is

24   opposing that part of the motion and we have briefed that.  In

25   a nutshell, the government is claiming that this Court should
```

Draft Copy

1    not consider the Supreme Court's recent decision in Kimbrough

2    which held that a District Court, as I'm sure Your Honor is

3    well aware, would not be abusing its discretion were it to

4    consider the disparity between crack and powder punishments in

5    the guidelines.

6           If the Court were to consider that disparity, the

7    offense level would come down to a point where time served

8    would, in fact, be a reasonable sentence.

9           I don't believe the government is correct that this

10   Court cannot consider Kimbrough.  I don't believe Congress has

11   said that this Court can't consider Kimbrough.  If the

12   Sentencing Commission said it, quite frankly, that's well

13   beyond the power of the Sentencing Commission to tell the

14   Supreme Court what decisions they should or should not follow

15   in considering statutes.

16          The second point is that the case that we cite in our

17   brief is the Eleventh Circuit's decision in Vautier,

18   V-a-u-t-i-e-r.  In that case, the Eleventh Circuit held that a

19   District Court in a 3582(c)(2) proceeding, that is to say the

20   very proceeding we are here today, can revisit, has unfettered

21   discretion to revisit a nonguideline decision.  In that

22   context, it would have been a departure decision.  Of course,

23   in the Booker world that we are now in that would incorporate

24   the variances from the guidelines.

25          In a prior sentencing of this very defendant this

USA vs EDWARD MELVIN - 05/14/08
May 14, 2008

Page 4

1    Court, instead of imposing the 100-month sentenced, imposed a

2    33-month sentence.

3            THE COURT:   You neglected to say that I was reversed

4    by the Eleventh Circuit on that sentence.

5            MR. CONE:   That is very much noted in our briefs, Your

6    Honor.   However, the more recent decision imposing the

7    100-month sentence was a post Booker decision, and that

8    decision reflects a -- that judgment, I should say, reflects a

9    decision not to vary from the guidelines.   We feel that at this

10   point Vautier says that Your Honor has the discretion to vary

11   from the guidelines.

12           I should also note that the 33-month sentence, while

13   reversed by the Eleventh Circuit, as you just noted, was

14   reversed pre Kimbrough, at a time when the Eleventh Circuit

15   case law held that this Court had no discretion to second guess

16   the crack guidelines.   We know that that has now been

17   overruled.   The law has changed.   When the law changes, people

18   should get the benefit of it.   People being Mr. Melvin.

19           Your Honor's 33-month sentence, I respectfully submit,

20   I have been watching you this afternoon, was not a frivolous

21   order.   It was based on a pretty sound judgment that Mr. Melvin

22   was a small-time crack dealer.   The total quantity is 5.6

23   grams.   A 100-month sentence is, frankly, a grotesquely high

24   sentence for a crime of that nature.   33 months reflected

25   appropriately the sentence and that's the kind of sentence we

USA vs EDWARD MELVIN - 05/14/08
May 14, 2008

Page 5

1   are asking for today.

2          THE COURT:  Counsel for the United States, respond.

3          MS. VAGLIENTI:  Thank you, Your Honor.  Counsel for

4   the defendant begins by saying Congress has not said it, the

5   Commission has said it, but in fact Congress has said it.  What

6   Congress said in Section 3582, and they were very clear in

7   their limitation, is that the power of the Court to reduce

8   sentences in Section 3582 is limited by the policy statements

9   of the Commission.  It is very express in the statute that it

10  is a statutory limitation.

11         THE COURT:  But don't I have to read those policy

12  limitations in light of Court decisions and wouldn't I not now

13  read those same guideline discussions in light of Kimbrough?

14         MS. VAGLIENTI:  No, I do not believe you would.

15         THE COURT:  So the Supreme Court was wrong?

16         MS. VAGLIENTI:  The Supreme Court was not wrong when

17  it decided Kimbrough, but Kimbrough does not apply to 3582

18  proceedings, is the position of the government.

19         THE COURT:  So you are saying because this is a

20  resentence, I cannot now use the discretion I would have had

21  under Kimbrough or Booker had this matter been before me today?

22         MS. VAGLIENTI:  Correct, it is not a full

23  re-sentencing, Your Honor, it is a very limited proceeding.  It

24  is a very limited proceeding to apply only the retroactive

25  amendment and only that amendment to the extent that Congress

1   has said the Commission made a policy statement to give the

2   Court the authority to do that.  In its policy statement, the

3   Commission has been very limited.

4          It has said, first of all, it is not a full

5   re-sentencing.  The Eleventh Circuit has several times, in

6   Bravo and Moreno, indicated that 3582 proceedings are not total

7   re-sentencing hearings.  They are very limited re-sentencing

8   proceedings.  The policy statement has been very specific that

9   the Court, in its re-sentencing or providing the benefit with

10  the benefit of an amendment, may not go less than the minimum

11  of the amended guideline range determined in the subdivision.

12         I think that both counsel for the defense and the

13  government agree that the minimum guideline range here is the

14  84-month sentence.  So his request for a time served sentence

15  would be well below the limitations set forth in the policy

16  statement.

17         There are several other reasons, though, beyond the

18  statutory restriction that renders Booker and Kimbrough not

19  applicable beyond the statutory restriction and beyond the fact

20  that a floor has been already set by the policy statements

21  promulgated by the Commission which were very recently amended,

22  Your Honor.

23         Booker and Kimbrough did not -- if I could explain

24  this correctly.  Booker and Kimbrough, when the Court excised

25  those portions in the Booker decision, the mandatory minimums,

1   it did not excise Section 3582, which was not affected by

2   Section 3553(b).  It left that alone and it said all other

3   portions of the statute meet our constitutional requirements.

4           A 3582 is a reduction of the defendant's sentence, it

5   is the only thing that can be done.  The Court has no power to

6   increase the defendant's sentence, which is another reason why

7   the remedial provisions of Kimbrough and Booker do not apply.

8           Another reason that they don't apply is if you think

9   about the very argument that defense counsel ended with where

10  he said people should get the benefit of Kimbrough on

11  re-sentencing, it doesn't apply in a 3582 proceeding because

12  Booker is not remedial.  So there are all the people that were

13  sentenced before Booker came into effect that Booker does not

14  apply to because it's not remedial.  I doubt very much that

15  Kimbrough will be remedial if Booker is not remedial.

16          So, this huge disparity would be created not only for

17  the people to whom those cases do not apply to, but for the

18  people who Amendment 706 does not apply to, for example, career

19  offenders.  Amendment 706 does not apply to career offenders.

20  So now there's going to be this very small subset of

21  defendants --

22          THE COURT:  But that's a different characteristic that

23  is applied in terms of sentencing, whether you're a career

24  offender as opposed to what Mr. Cone said is a low-level crack

25  dealer.  That's a different offender characteristic that you

1   look at in the guidelines in order to correctly determine the

2   advisory guideline range.

3           MS. VAGLIENTI:  But, Your Honor, it doesn't change the

4   fact that a huge disparity would be created.  What about the

5   people that mandatory minimums apply to?

6           THE COURT:  That disparity exists already.

7           MS. VAGLIENTI:  It doesn't exist in the sense of

8   saying you cannot make the argument.  A career offender could

9   make the Kimbrough argument if he were being sentenced today.

10          THE COURT:  But if the career offender is a statutory

11  requirement that I'm bound to follow, I would follow it.

12  However, if the career offender is merely an enhancement for

13  which the Court would have discretion under the advisory

14  guideline range, I would be capable of using that discretion.

15  So, the fact that a disparity in and of itself exists, does not

16  mean the Court cannot exercise discretion.

17          What I want to know and what I am asking from the

18  United States, given what the case law says in Moreno, am I

19  bound to the limited requirements of the Section 3582?

20          MS. VAGLIENTI:  Yes, Your Honor.

21          THE COURT:  That's what I want to know.  There is

22  going to be disparity.  There is going to be disparity even

23  among the people who are eligible to be resentenced under the

24  guidelines because there are going to be people who, for

25  whatever reason, are going to point out higher than Mr. Melvin

USA vs EDWARD MELVIN - 05/14/08
May 14, 2008

1    does.

2              MS. VAGLIENTI:   But that's not the same disparity as

3    saying beyond the two level reduction that applies equally to

4    the people to whom it applies, you can now completely reopen

5    your sentencing and argue all these things and relitigate your

6    sentence.

7              THE COURT:   So your argument is that Moreno is

8    applicable to these cases.   That's the case cited in Mr. Cone's

9    papers.

10             MS. VAGLIENTI:   It's also cited in the government's

11   papers, Your Honor, which says that all original sentencing

12   determinations remain unchanged with the sole exception of the

13   guideline range that has been amended.

14             So, yes, it is the government's position that all

15   those sentencing determinations previously made by the Court

16   remain unchanged.   Then, under Section 3582, what the Court has

17   the power to do is to lower by two levels the defendant's

18   sentencing range.   It cannot then go below the minimum amended

19   guideline range.

20             THE COURT:   Other than Moreno, do you have authority

21   for that proposition?

22             MS. VAGLIENTI:   There is the Bravo decision, Your

23   Honor, which is at 203 F.3d --

24             THE COURT:   Do you have a 3582(c)(2) case decided post

25   Kimbrough?

Draft Copy

1            MS. VAGLIENTI:  No, Your Honor, but Kimbrough having

2    been decided in December of 2007, and this amendment -- I think

3    this is the first amendment that came into play after the

4    Kimbrough decision, Your Honor, where 3582 would come in.  So

5    there is no decision that I could cite the Court to from the

6    Eleventh Circuit on this issue yet.

7            But I do think the Court can look at the cases that

8    existed before Kimbrough where amendments were made retroactive

9    and these same arguments were made, albeit not with the

10   suggestion that the guidelines were advisory, but in those same

11   instances the defendants were making arguments, now that we are

12   back before the Court for a sentencing, you can go beyond what

13   the retroactive amendment lets you do.  Formerly the Courts

14   have said, no, we can't do that.  We are bound by Section 3582

15   and what we are told we can do.

16           THE COURT:  The new advisory guideline range is

17   advisable, correct?

18           MS. VAGLIENTI:  I'm sorry?

19           THE COURT:  The new crack guideline range is not a

20   statutory minimum, correct?

21           MS. VAGLIENTI:  Correct, the Court has the discretion.

22           THE COURT:  That is an advisory guideline sentence

23   like every other, correct?

24           MS. VAGLIENTI:  Yes, Your Honor.

25           THE COURT:  So, if the guidelines are advisory and the

Draft Copy

USA vs EDWARD MELVIN - 05/14/08
May 14, 2008

1    Court must look at all the factors in 3553 and the advisory

2    guideline range, why would it not then be the case that, in

3    looking at the 3553 factors, I could now sentence Mr. Melvin

4    below the number that is noted in -- as 84 to 105 months if I

5    find that, looking at 3553 factors, that is not an appropriate

6    sentence?

7            MS. VAGLIENTI:   Because by statute, Congress has

8    limited this Court's authority to do that.   It has said in

9    Section 3582 any sentence reduction in the defendant's term of

10   imprisonment shall be consistent with the policy statements of

11   the Commission.

12           THE COURT:   But you see why, when you say that, it's

13   not logical.   It's not logically consistent that you could have

14   an advisory guideline range when you tell the Judge -- and if I

15   am wrong, point it out.   If you have got an advisory guideline

16   range that says to me, what the Court requires is, I look to

17   see if the guideline range is correctly computed.   Then if I

18   look at the advisory guideline range and the factors in 3553

19   and I find that the advisory guideline range is the reasonable

20   sentence after going through the 3553 factors, then I can

21   sentence the defendant outside the advisory guideline range as

22   long as I don't exceed the statutory maximum.

23           MS. VAGLIENTI:   I don't agree because if you took that

24   to its extreme, then the fact that the amendment is made

25   retroactive is advisory, that it's listed anywhere is advisory

1   because the whole thing is advisory under the argument that the

2   Court's making.  So the Court could decide the amendment is

3   advisory, I don't have to consider the amendments at all.  I am

4   sure defense counsel isn't arguing that position, that the

5   amendment is advisory.

6           THE COURT:  Let me hear from the defendant.

7           MR. CONE:  I think -- the defendant is not here.  He

8   doesn't have a right to be here, but I have spoken to him.  He

9   has no disciplinary problems.  To the contrary, he has been

10  doing very well at FCI Koleman and he has certificates in real

11  estate and other things that are very encouraging.

12          The government's position hinges entirely on one

13  point, which is that Congress, when it wrote 3582 before

14  Kimbrough was decided, and well before since it was part of the

15  Sentencing Reform Act, anticipated that when it said that a

16  reduction should be consistent with applicable policy

17  statements of the Sentencing Commission, that the Sentencing

18  Commission would have the power to tell this District Court in

19  a policy statement, don't look at a Supreme Court decision

20  interpreting 3553(a), the very statute that the factors set

21  forth in are referenced in this very same statute.

22          That's an argument, but in this particular context,

23  it's an argument that really doesn't make sense, because what

24  did the Supreme Court say in Kimbrough?  It said, Sentencing

25  Commission, you based your crack guideline on your belief,

1    which was incorrect, that the mandatory minimum that had a 100

2    to 1 ratio should instruct you on how you should write your

3    guidelines.

4         The Supreme Court said that's a completely incorrect

5    inference from congressional statutes.  You have made a mistake

6    here and a District Court has the discretion not to be bound by

7    that, but to actually weigh the factors and decide how to

8    punish crack cocaine offenders.

9         So what the government is reading this statute to say

10   is Congress meant to empower the Sentencing Commission after

11   the Supreme Court comes down with a decision and says,

12   Sentencing Commission, you misinterpreted the congressional

13   intent to say, well, Courts, don't look at what the Supreme

14   Court said, do what we say, two levels, no more.  Don't look at

15   Kimbrough, we are the ones who set mandatory policy for crack

16   cocaine offenders.

17        I don't believe that that is what Congress intended in

18   3582(c).  It intended for this Court, as this Court has put it

19   very well, to look at the 3553(a) factors, take a look at

20   Kimbrough and how it interprets it in this specific context,

21   and come out with a reasonable sentence.

22        I will respond to the retroactivity point.  When the

23   Sentencing Commission reduces a guideline offense level, what

24   that does is trigger jurisdiction under 3582(c)(2), because

25   3582(c)(2) only comes into play, only takes effect for a

1  defendant who has been sentenced to a term of imprisonment

2  based on a sentencing range that has subsequently been lowered

3  by the Sentencing Commission.  So, that's what the Sentencing

4  Commission does, is it creates, if you will, as a gatekeeper

5  jurisdiction for 3582(c)(2).

6          It's quite something else to say, now that you have

7  acted as the gatekeeper and said this offense level we had was

8  mistaken, a reduction is in order.  It's quite a different

9  thing to then turn and tell District Courts like this Court,

10  oh, Supreme Court decisions, don't look at those, just look at

11  what we say.  I don't believe that is what Congress had in mind

12  when it drafted the statute.

13          THE COURT:  Thank you.  This is a bit of a sticky

14  wicket.  I think the government over simplifies it in a sense

15  by saying, once you have the pronouncement from the Sentencing

16  Commission the Court can go no more.  But I have to look at the

17  fact that the portion of the guidelines that I am proceeding

18  under didn't contemplate Booker, didn't contemplate Kimbrough

19  and didn't contemplate the idea that you have an advisory

20  guideline range that the Court is now supposed to look at in

21  enunciating what it thinks is the appropriate sentence.

22          If you look at the history here, it's no secret that I

23  initially thought that the first guideline range in this case

24  was too high.  I sentenced the defendant outside the advisory

25  guideline range and the Eleventh Circuit disagreed and

1  directed me to come back with some very specific things that I

2  had to do.  And I sentenced the defendant within the advisory

3  guideline range at the time.

4         The new advisory guideline range is 84 to 105 months.

5  What I don't understand from Probation is, is that his criminal

6  history category went up one point, or am I reading this wrong?

7  I have that his criminal history category when he was sentenced

8  in the 2003 manual was a five, and then under the 2007 manual

9  he would be a six.  Am I misreading that?

10        PROBATION OFFICER:  Your Honor, we don't have that

11  information with us.

12        THE COURT:  I'm sorry.  You did another sentence.  I

13  apologize.

14        MR. CONE:  This is the first I've heard that the

15  criminal history -- I've always been assuming that it's five.

16  I might note that it's a very severe five.  It's a series of

17  relatively minor offenses.

18        THE COURT:  So if he is at a criminal history category

19  23, which he would be now -- am I understanding this wrong?

20        MR. CONE:  Criminal history?

21        THE COURT:  I'm sorry.  Total offense level 23.

22        MR. CONE:  Under the amended.

23        THE COURT:  Yes, and if his criminal history category

24  remains a five --

25        MS. VAGLIENT:  I don't have the benefit of what the

1    Court is looking at, that Probation calculated it to a six.    I

2    don't know what the Court is referring to, Your Honor.

3          PROBATION OFFICER:  Your Honor, if you are inquiring

4    as to the imprisonment range, we have if the offense level is a

5    23 with a criminal history of five, it would be 84 to 105

6    months.

7          THE COURT:  So that obviously was just a typo, because

8    that's the guideline range that Probation says it should be

9    after the new guideline range, 84 to 105 months.

10          After reviewing the sentencing materials, as well as

11    the motion for reduction of sentence, I reduce the defendant's

12    sentence as follows.  My understanding is the defendant was

13    previously serving a 100 -- the original guideline range was

14    100 to 125 months.  The defendant was sentenced to 100 months.

15    The new guideline range is 84 to 105 months.  I now sentence

16    the defendant to a total of 75 months.

17          I believe that, based upon the materials provided and

18    looking at the factors in 3553, that that is a reasonable

19    sentence given this defendant's necessity for rehabilitation,

20    incarceration, et cetera, which are all specifically outlined

21    in 3553.

22          Anything further on behalf of the United States?

23          MS. VAGLIENTI:  Your Honor, if I could just be heard

24    on the 75 month sentence.  The government does believe that the

25    84 month sentence was the reasonable sentence.  When the Court

Draft Copy

USA vs EDWARD MELVIN - 05/14/08
May 14, 2008

1  resentenced the defendant on the last time with the 100 month

2  sentence, Booker was applicable and the Court did make the

3  specific findings under 3553 that the 100 month sentence was

4  the reasonable sentence.

5        I believe with the amended guidelines, the 84 month

6  sentence is the reasonable sentence, particularly given the

7  defendant's criminal history, the number of times -- in this

8  particular case, he sold crack cocaine three times.  He did it

9  within range of a protected zone, that being a playground, and

10  for the other reasons we had articulated previously in our

11  briefs.  I know the Court has heard this many times, but that

12  would be the reason for the sentence.

13        So we would remake all of the arguments that we have

14  previously made as to the appropriate sentence in this case.

15  Obviously we object to the Court going beyond the 84 month

16  sentence and would ask to preserve those objections.

17        THE COURT:  Your objections are preserved.  I just

18  want to add one further thing for the record.  I did not have

19  the, when I sentenced the defendant before me the last time,

20  the Supreme Court's two recent decisions that came out in

21  December of 2007.  I have to say those are the reasons why,

22  particularly the guidance given to me by the Supreme Court in

23  those decisions, why I am departing outside the guideline

24  range, neither of which were available to me when I sentenced

25  the defendant at the original sentencing.

USA vs EDWARD MELVIN - 05/14/08
May 14, 2008

Page 18

1          MS. VAGLIENTI:  Of course, Your Honor.  To the extent

2    that defense counsel has argued post sentencing conduct somehow

3    makes a lower sentence more appropriate, we would object to

4    that as post sentencing conduct is not something that the Court

5    should consider in a re-sentencing.

6          THE COURT:  Thank you very much, counsel.

7          MR. CONE:  Judge, just two quick things.  One I can't

8    resist, but I have to point out that in the recent guideline

9    amendments they actually have instructed that post sentencing

10   conduct should be taken into account.  It's the application

11   notes in 1B1.10, so the prosecution may want to take a look at

12   that.

13         Beyond that, Your Honor, by the two recent Supreme

14   Court cases I take it you mean that you too are troubled by the

15   crack/powder disparity that --

16         THE COURT:  I am not troubled by it.  I'm just saying

17   the Supreme Court gave the Courts discretion in those two cases

18   as to how to treat an offender and saying that we must be

19   offender specific in announcing guideline range sentences.  So,

20   it is not a personal troubling, counsel.  It is merely the

21   guidance that I think I was given by the Supreme Court in those

22   two cases.

23         MS. VAGLIENTI:  If I may just finish.  The section

24   that defense counsel points to that he says I need to take a

25   look at is also the section that says about post sentencing

Draft Copy

USA vs EDWARD MELVIN - 05/14/08
May 14, 2008

Page 19

1   conduct, to the extent that such a reduction is warranted, it

2   is limited by subsection B, which says that the Court cannot go

3   below the minimum of the amended range.

4        The government would ask that the Court stay the

5   execution of the sentence so that it has an opportunity to

6   consider whether to take an appeal.

7        THE COURT:  I think, given the defendant's sentence,

8   he is not going anywhere anytime soon, counsel.  Thank you very

9   much.

10                  [Proceedings concluded.]

11                 C E R T I F I C A T E

12       I hereby certify that the foregoing is an accurate

13  transcription of proceedings in the above-entitled matter.

14

15

16

17

18

19

20   _____        _____
     DATE FILED             ROBIN M. DISPENZIERI, RPR-CP
21                          Official Federal Court Reporter
                            United States District Court
22                          301 North Miami Avenue, 6TH Floor
                            Miami, FL  33128 - 305/523-5158
23

24

25   Draft Copy

May 14, 2008

USDC FLSD 245B (Rev. 12/03) - Judgment in a Criminal Case                                                                Page 1 of 7

# United States District Court

## Southern District of Florida

### MIAMI DIVISION

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | (THIRD AMENDED JUDGEMENT)<br>**JUDGMENT IN A CRIMINAL CASE** |
| **v.** | **Case Number: 04-60192-CR-COOKE** |
| **EDWARD MELVIN** | **USM Number: 56981-004** |

Counsel For Defendant: Tim Cone, AFPD
Counsel For The United States: Julia Vaglienti, AUSA
Court Reporter: Robin Dispenzieri

**Date of Original Judgment:** September 19, 2006
(Or Date of Last Amended Judgment)

**Reason for Amendment:**

☐ Correction of Sentence on Remand (18 U.S.C. 3742(f)(1) and (2))
☐ Reduction of Sentence for Changed Circumstances (Fed. R. Crim. P. 35(b))
☐ Correction of Sentence by Sentencing Court (Fed. R. Crim. P. 35(a))
☐ Correction of Sentence for Clerical Mistake (Fed. R. Crim. P. 36)

☐ Modification of Supervision Conditions (18 U.S.C. §§ 3563(c) or 3583(e))
☐ Modification of Imposed Term of Imprisonment for Extraordinary and Compelling Reasons (18 U.S.C. § 3582(c)(1))
☒ Modification of Imposed Term of Imprisonment for Retroactive to the Sentencing Guidelines (18 U.S.C. § 3582(c)(2))

☐ Direct Motion to District Court    ☐ 28 U.S.C. § 2255 or
    ☐ 18 U.S.C. § 3559(c)(7)
☐ Modification of Restitution Order (18 U.S.C. § 3664)

The defendant pleaded guilty to Counts one, two, and three of the Indictment.
The defendant is adjudicated guilty of the following offenses:

| TITLE/SECTION NUMBER | NATURE OF OFFENSE | OFFENSE ENDED | COUNT |
|---|---|---|---|
| Title 21, U.S.C. §§ 841(a)(1) and 860 | Distribute and possess with intent to distribute crack cocaine within 1000 feet of a school | July 21, 2004 | 1 |
| Title 21, U.S.C. §§ 841(a)(1) and 860 | Distribute and possess with intent to distribute crack cocaine within 1000 feet of a school | July 23, 2004 | 2 |
| Title 21, U.S.C. §§ 841(a)(1) and 860 | Distribute and possess with intent to distribute crack cocaine within 1000 feet of a school | July 28, 2004 | 3 |

The defendant is sentenced as provided in the following pages of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

USDC FLSD 245B (Rev. 12/03) - Judgment in a Criminal Case                                                                    Page 2 of 7

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of any material changes in economic circumstances.

Date of Imposition of Sentence:
5/14/2008



MARCIA G. COOKE
United States District Judge




May 14, 2008

Case 1:98-cr-00258-BEL    Document 347    Filed 08/08/2008    Page 50 of 55

Case 0:04-cr-60192-MGC    Document 85    Entered on FLSD Docket 05/16/2008    Page 3 of 7
USDC FLSD 245B (Rev. 12/03) - Judgment in a Criminal Case                                                                              Page 3 of 7

DEFENDANT: EDWARD MELVIN
CASE NUMBER: 04-60192-CR-COOKE

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of (As Reduced) 75 **Months as to counts 1 - 3, all counts concurrent.**

The Court makes the following recommendations to the Bureau of Prisons:

That the defendant serve his term of imprisonment in the southern district of Florida. In addition, the Court recommends the defendant to participate in the Bureau of Prison's 500 hour Drug Program.

The defendant is remanded to the custody of the United States Marshal.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

_____

Defendant delivered on _____ to _____

at _____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By:_____
Deputy U.S. Marshal

Case 1:98-cr-00258-BEL    Document 347    Filed 08/08/2008    Page 51 of 55
Case 0:04-cr-60192-MGC    Document 85    Entered on FLSD Docket 05/16/2008    Page 4 of 7
USDC FLSD 245B (Rev. 12/03) - Judgment in a Criminal Case                                                                    Page 4 of 7

DEFENDANT: EDWARD MELVIN
CASE NUMBER: 04-60192-CR-COOKE

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of **6 years**.

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

**The defendant shall not possess a firearm, destructive device, or any other dangerous weapon.**

If this judgment imposes a fine or a restitution obligation, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1. The defendant shall not leave the judicial district without the permission of the court or probation officer;
2. The defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;
3. The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4. The defendant shall support his or her dependents and meet other family responsibilities;
5. The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6. The defendant shall notify the probation officer **at least ten (10) days prior** to any change in residence or employment;
7. The defendant shall refrain from the excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8. The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9. The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10. The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;
11. The defendant shall notify the probation officer within **seventy-two (72) hours** of being arrested or questioned by a law enforcement officer;
12. The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13. As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

USDC FLSD 245B (Rev. 12/03) - Judgment in a Criminal Case

DEFENDANT: EDWARD MELVIN
CASE NUMBER: 04-60192-CR-COOKE

## SPECIAL CONDITIONS OF SUPERVISION

The defendant shall also comply with the following additional conditions of supervised release:

The defendant shall participate in an approved treatment program for drug and/or alcohol abuse as directed by the U.S. Probation Office, and abide by all supplemental conditions of treatment. Participation may include inpatient/outpatient treatment, if deemed necessary. The defendant will contribute to the costs of services rendered (co-payment) in an amount determined by the U.S. Probation Officer, based on ability to pay, or availability of third party payment.

The defendant shall submit to a search of his person or property conducted in a reasonable manner and at a reasonable time by the U.S. Probation Officer.

USDC FLSD 245B (Rev. 12/03) - Judgment in a Criminal Case

DEFENDANT: EDWARD MELVIN
CASE NUMBER: 04-60192-CR-COOKE

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the Schedule of Payments.

| Total Assessment | Total Fine | Total Restitution |
|---|---|---|
| $300.00 | $ | $ |

*Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18, United States Code, for offenses committed on or after September 13, 1994, but before April 23, 1996.

Case 1:98-cr-00258-BEL    Document 347    Filed 08/08/2008    Page 54 of 55
Case 0:04-cr-60192-MGC    Document 85    Entered on FLSD Docket 05/16/2008    Page 7 of 7
USDC FLSD 245B (Rev. 12/03) - Judgment in a Criminal Case                                                                    Page 7 of 7

DEFENDANT: EDWARD MELVIN
CASE NUMBER: 04-60192-CR-COOKE

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

    A.  Lump sum payment of **$300.00** due immediately.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

**The assessment/fine/restitution is payable to the U.S. COURTS and is to be addressed to:**

    **U.S. CLERK'S OFFICE**
    **ATTN: FINANCIAL SECTION**
    **301 N. MIAMI AVENUE, ROOM 150**
    **MIAMI, FLORIDA 33128**

**The assessment/fine/restitution is payable immediately. The U.S. Bureau of Prisons, U.S. Probation Office and the U.S. Attorney's Office are responsible for the enforcement of this order.**

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) community restitution, (6) fine interest (7) penalties, and (8) costs, including cost of prosecution and court costs.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA             *

              v.                          *      Criminal No. L-98-0258

ANTWAN ASKIA
                                     *

*   *   *   *   *   *   *

# O R D E R

Upon review of the status report filed by the Office of the Federal Public Defender after undertaking a preliminary review of the defendant's eligibility to seek a reduction in sentence based on the retroactive application of Amendment No. 706 to the United States Sentencing Commission related to cocaine base ("crack") offenses, and upon being advised that the defendant is indigent and unable to afford counsel, it is this ___ day of _____, 2008, ordered by the United States District Court for the District of Maryland that:

1)    The status report shall be docketed as a Supplemental Motion for Reduction of a Sentence under 18 U.S.C. § 3582(c) and Amendment 706; and

2)    The Government shall state within 30 days its position on the motion for reduction of sentence.

 

_____
The Honorable Benson E. Legg
Chief United States District Judge